# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OTHA L. FERGUSON, | : | No. 1:12-CV-01993 |
| Plaintiff, | : | Hon. John E. Jones III |
| v. | : | |
| KEMPER, A Unitrin Business, Unitrin Auto and Home, | : | |
| Defendants. | : | |

## MEMORANDUM & ORDER

### February 15, 2013

## I. INTRODUCTION

Presently before the court in the above-captioned action is the Motion to Dismiss of Defendant Kemper ("Kemper") (doc. 13) which seeks partial dismissal of the Plaintiff's Amended Complaint (doc. 8) and further requests the Court to strike certain impermissible damages requests therefrom. The Motion is deemed unopposed as a result of the Plaintiff's failure to file timely opposition papers pursuant to Local Rule of Court 7.6. For the reasons detailed herein, we will grant the Defendant's Motion in its entirety and grant the relief requested therein.

## II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. \_\_\_, 129

S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the

merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. PROCEDURAL HISTORY & STATEMENT OF FACTS

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from the Plaintiffs' Complaint and viewed in a light most favorable to the Plaintiffs.

Plaintiff is Otha L. Ferguson ("Plaintiff" or "Ferguson") who owns property located at 415 Latshmere Drive in Harrisburg, Dauphin County, Pennsylvania (the "Property"). (Doc. 8, ¶ 1). Defendant Kemper, also known as Unitrin Auto and Home Insurance Company ("Kemper"), is a licensed property and casualty insurer in the state of Pennsylvania. (*Id.* ¶ 2). On or about December 17, 2010, Kemper issued a Homeowner's Policy of Insurance ("Kemper Policy #UB436510") for the Property which was in full force and effect at all relevant times herein. (*Id.* ¶ 4). The Property is subject to a mortgage and security agreement for the benefit of Wells Fargo Bank (the "Mortgage") which is an additional insured under the Policy. (*Id.* ¶ 5).

The basement of the residence located at the Property contained a large

kitchen, a bar area, an 8-foot by 8-foot kitchen/utility room, a dining room, a bathroom, and a small hallway, all of which were finished rooms with subflooring and had recently been carpeted or received flooring. (*Id.* ¶ 6). In March of 2011, a storm-related flood occurred, causing standing water to back up into the basement. (*Id.* ¶ 7). Ferguson submitted a claim to Kemper, the adjuster authorized repairs to be made, and Kemper paid the claim to Ferguson for an amount of $4,244.63, after application of a $500 deductible. (*Id.*). Then in June of 2011, a second storm-related flood occurred, again damaging the basement. (*Id.* ¶ 8). The adjuster arrived four (4) days after the flood, at which time the water had receded and Ferguson had cleaned up much of the damage. (*Id.*). As a result, the adjuster concluded that he could not verify that storm-related flooding had caused the damage and denied the claim; Ferguson believed that the denial was a result of the adjuster's untimely and inadequate inspection and not a Policy exclusion. (*Id.*).

In September of 2011, Hurricane Irene brought strong winds and heavy rains to Ferguson's neighborhood, and the area was declared a disaster zone. (*Id.* ¶ 9). The storm caused major water damage to the Property, despite the functioning sump pump in the basement. (*Id.*). Ferguson submitted a claim to Kemper on the date of the occurrence, but an adjustment team did not arrive until September 19, 2011. (*Id.*). Noel Evans, one of Kemper's field adjusters, immediately contracted

with DH Storm Team a/k/a/ Serv-Pro LLC ("Serv-Pro"), a fire and water damage clean-up services, ordering that all waterlogged carpeting be removed. (*Id.*).

Plaintiff sought verification from Kemper that it had hired Serv-Pro to do the remediation work and only after receiving assurances permitted Serv-Pro to commence its work. (*Id.*). The Serv-Pro Information Sheet, which indicated that the source of intrusion was sump overflow, identified Kemper as the contracting party. (*Id.* ¶ 12). On September 20, 2011, the Serv-Pro employees "gutted" the basement, removing the carpets, wiring, flooring, plumbing, ceiling tiles, plywood wall, appliances, clothing, and furniture; Serv-Pro also removed paneling material approximately three feet from the floor to prevent further mold growth. (*Id.* ¶ 11). Evans told Ferguson that the claim would be paid by Kemper "just like the last time on March 16, 2011." (*Id.* ¶ 13). An internal email at Serv-Pro indicates that a Serv-Pro employee, Daniel Sacco, was assured by Evans that the loss would be covered, stating that "we . . . confirmed coverage and began the demo work" and "we were told that this was a covered loss and that's why we did the work we did." (*Id.* ¶ 14). Kemper agents repeatedly assured Ferguson that the loss would be covered by Kemper, including all sums necessary to return the Property to its preexisting condition. (*Id.* ¶¶ 19-20). Kemper ultimately denied coverage to Ferguson, and Serv-Pro has now commenced collection efforts against Ferguson,

claiming that the contract which Kemper authorized was actually binding upon only Ferguson and not Kemper. (*Id.* ¶ 15).

Following the hurricane, Ferguson promptly applied for federal disaster assistance in the form of Small Business Administration ("SBA") disaster loan in the amount of $14,000, of which he remitted $8,000 to his brother to reimburse him for the furniture lost in the September flood. (*Id.* ¶ 16). Ferguson also applied for a Federal Emergency Management Authority ("FEMA") disaster relief and was awarded a grant in the amount of $13,003.04. (*Id.* ¶ 17). These amounts were and remain insufficient to cover the costs of returning the basement to its pre-flood state or the amounts due to Serv-Pro. (*Id.*).

On September 27, 2011, a letter was mailed to Ferguson by Kemper's corporate office which denied coverage for the loss based on an exclusion in the policy for "damage resulting from surface/subsurface water." (*Id.* ¶ 22). This was the first time anyone from Kemper had indicated that the loss may not be covered by the Policy. (*Id.*). After the letter was sent, Evans and another adjuster, James Stall, continued to assure Ferguson that Kemper would cover the losses. (*Id.* ¶ 23). Stall suggested that Ferguson complain to Kemper's corporate office about the letter, and Ferguson did, to no avail. (*Id.*). Ferguson thereafter received a call from Jim Kelley, the supervisor of Evans' and Stall's adjustment team, who advised that

7

neither Evans nor Stall was a Kemper employee and neither had the authority to enter into the Serv-Pro contract. (*Id.* ¶ 24).

Serv-Pro billed Ferguson $23,027.00 for the demolition work. (*Id.* ¶ 25(b)). To obtain estimates for remediation costs, Ferguson contracted with the Public Adjustment Firm of Young Adjustment Company which has indicated that the personal property loss is $9,258.60, exclusive of the $8,000 that Ferguson paid to his brother as reimbursement for the storm damage to his furniture, and the cost of restoration work will be $29,790.47. (*Id.*). Accordingly, Ferguson claims that the total loss stands at $70,076.07, less application of a $500.00 deductible, for a total claim of $69,576.07. (*Id.*). Ferguson asserts that Kemper is obligated by the Policy to reimburse him for this loss amount, but Kemper refuses to pay the claim. (*Id.*).

Ferguson commenced this action with the filing of a Complaint (doc. 1) in the Court of Common Pleas of Dauphin County, Pennsylvania, on September 7, 2012. Kemper timely removed the case to this Court on October 9, 2012. (*Id.*). On October 23, 2012, Kemper filed a Rule 12 motion to dismiss (doc. 3) and brief in support thereof (doc. 4). Thereafter, on December 19, 2012, Ferguson filed an Amended Complaint (doc. 8) which Kemper claims cured "some but not all" of the defects of the original Complaint. Accordingly, on January 2, 2013, Kemper filed the instant Motion to Dismiss Counts II, V, and VIII and Strike Certain Damages

(doc. 13) and a supporting brief (doc. 14). Local Rule 7.6 requires that briefs in opposition be filed within fourteen (14) days of receipt of the movant's supporting brief. Thus, Ferguson's opposition papers were due on or before January 16, 2013. Pursuant to Local Rule 7.6, and as a result of Ferguson's failure to file opposition papers, this Motion is deemed unopposed.

## IV. DISCUSSION

In his six-count Amended Complaint, Ferguson asserts the following causes of action: breach of contract based on reasonable expectations of coverage (Count I); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count II); statutory insurance bad faith in violation of 42 PA. CONS. STAT. § 8371 (Count IV); detrimental reliance/promissory estoppel (Count V); breach of contract for latent and other mold and contaminant damage (Count VII); and an indemnity action for third-party claims (Count VIII). (Doc. 8).[1] In its Motion to Dismiss, Kemper contends that Counts II, V, and VIII fail to state a claim and that the punitive damages request in Count II and the compensatory, consequential, treble, and exemplary damages requests in Count IV must be stricken because the law does not provide for such damages. We address these

---

[1] Counts III and VIII of the original Complaint asserted claims for violation of the Unfair Insurance Practices Act and unjust enrichment, respectively. These Counts have been removed without renumbering in the Amended Complaint.

9

arguments *seriatim* and, met with no opposition from Ferguson, will ultimately grant the Motion in its entirety.

### A. Count II: UTPCPL Claim

Kemper asserts that Count II must be dismissed because Ferguson asserts claims for nonfeasance rather than misfeasance and that Pennsylvania law thus precludes the UTPCPL claim. We agree with Kemper and will accordingly dismiss Count II of the Amended Complaint.

Courts have long held that while the UTPCPL "encompasses a wide variety of misfeasance," there is no support in the statute for *nonfeasance* claims. *See, e.g.*, *Parasco v. Pacific Indemnity Company*, 920 F. Supp. 647, 656 (E.D. Pa. Apr. 4, 1996) (holding that mere failure of insurance company to pay additional living expenses under an insurance policy "is nonfeasance and therefore not actionable under the [UTPCPL]."); *see also Fass v. State Farm Fire & Casualty Co.*, 2006 U.S. Dist. LEXIS 51478, *7 (E.D. Pa. July 27, 2006) ("[T]he UTPCPL only protects plaintiffs against a defendant's malfeasance; nonfeasance is not covered by the statute."). Based on these principles, Kemper contends that its failure to pay the insurance claim is not actionable under the UTPCPL.

Ferguson asserts broadly in the Amended Complaint that Kemper engaged in "misfeasance and/or nonfeasance" and committed acts of deception and

misrepresentation; however, despite the alternative designation, no facts in the Amended Complaint actually establish that Kemper actively committed any act of misfeasance. Rather, the Amended Complaint at best establishes that Kemper simply failed to perform a contractual obligation, namely nonpayment of an alleged contractual obligation, falling squarely within the definition of nonfeasance. *Fass,* 2006 U.S. Dist. LEXIS 51478, at *7 (defining misfeasance as "improper *performance* of a contractual obligation" and nonfeasance as the "*failure* to perform a contractual obligation" (emphasis added)). Indeed, courts within this Circuit have expressly held that mere failure to pay a claim under an insurance policy is unactionable nonfeasance rather than actionable misfeasance. *See Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995) ("[R]efusal to pay . . . constitutes nonfeasance [and] is not actionable."); *Hensley v. Nationwide Mut. Ins. Co.*, 1999 U.S. Dist. LEXIS 8797, *3-4 (E.D. Pa. June 16, 1999) ("Mere failure to pay an insurance policy is not actionable."). Thus, Ferguson's Count II, which asserts a claim premised on Kemper's nonpayment of an insurance policy, must be dismissed.[2]

### B. Count V: Detrimental Reliance and Promissory Estoppel

---

[2] Because we find that this malfeasance/nonfeasance distinction is dispositive to Ferguson's UTPCPL claim, we need not consider Kemper's arguments regarding the gist of the action and economic loss doctrines.

In Count V, Ferguson asserts a cause of action for detrimental reliance and promissory estoppel, contending that in the alternative to his breach of contract claims, he has relied to his detriment on the promises of payment made by adjusters Evans and Stalls when he permitted the Serv-Pro employees to commence repairs. Ferguson asserts that this reliance was detrimental in that his basement has been rendered unusable and he is without the financial resources to return the basement to its pre-flood condition or to make payment to Serv-Pro. Kemper argues that because Ferguson has pleaded the existence of a contract and the elements of a breach of contract claim, he is precluded from raising the equitable doctrine of promissory estoppel.

This Court has held that "where an enforceable contract exists, courts have found that applying the doctrine of promissory estoppel would be inappropriate." *Kump v. State Farm Fire & Casualty Ins. Co.*, 2012 U.S. Dist. LEXIS 47458, *9 (M.D. Pa. Apr. 4, 2012). In *Kump*, our colleague Judge A. Richard Caputo relied upon the Third Circuit's decision in *Carlson v. Arnot-Ogden Memorial Hospital*, 918 F.2d 411 (3d Cir. 1990), where the court held that the doctrine of promissory estoppel is reserved for "situations where the formal requirements of a contract have not been satisfied." *Id.* at 416. No facts pleaded in Ferguson's Amended Complaint distinguish this action from *Carlson* or *Kump*, and a like result is thus

compelled. Indeed, Ferguson admits the existence of a formal contract throughout the Amended Complaint. (Doc. 8, ¶¶ 42, 44). Accordingly, like the courts in *Carlson* and *Kump*, because Ferguson has pled the existence of a formal, written contract, we find that application of the equitable doctrine of promissory estoppel would be inappropriate and will thus grant Kemper's motion to dismiss that claim.

### C. Count VIII: Indemnification

In Count VIII of the Amended Complaint, Ferguson asserts a claim for indemnification against Kemper, contending that Kemper has exposed him to liability to Serv-Pro, Wells Fargo, and other third parties and that Kemper must fully indemnify Ferguson for any such liability that might arise. In his pleading, Ferguson concedes that the Policy does not provide for indemnification but asserts that equity compels the Court to allow this claim to proceed. (Doc. 8, ¶ 49). We disagree with Ferguson and find that there is no basis in either law or equity for his indemnification claim.

As Kemper appropriately observes, the Pennsylvania courts have expressly held that indemnification "is a common law equitable remedy . . . [that] is available *only* in the following circumstances: (1) where primary versus secondary or vicarious liability is present or . . . (2) where there is an express contract to indemnify." *E. Elec. Corp. of N.J. v. Rumsey Elec. Co.*, 2010 U.S. Dist. LEXIS

13

35758, *6-7 (E.D. Pa. Apr. 9, 2010) (quoting *City of Wilkes-Barre v. Kaminski Bros., Inc.*, 804 A.2d 89, 92 (Pa. Commw. Ct. 2002); *Nat'l R.R. Passenger Corp. v. URS Corp.*, 528 F. Supp. 2d 525, 532 (E.D. Pa. Nov. 23, 2007)). Thus, Ferguson's apparent argument in his Amended Complaint—that equity begs an exception to the rule—is belied by Pennsylvania law, which has already limited this equitable remedy to these two circumstances. Thus, our only inquiry is whether either of the two situations articulated in *Rumsey* are implicated here.

Ferguson concedes in the Amended Complaint that the "claim for indemnity is not contract-based" and thus the latter *Rumsey* option is unavailing. (Doc. 8, ¶ 49). Further, Ferguson has not pled, and no facts reasonably permit the inference, that there is a relationship between himself and Kemper which would support a finding of secondary or vicarious liability. *See, e.g.*, *Nat'l R.R. Passenger Corp.*, 528 F. Supp. 2d at 532 (holding that secondary liability exists "where there is a relation of employer and employee, or principle and agent"). Accordingly, because Ferguson has failed to plead facts falling within the two exclusive avenues to an indemnification claim, we cannot but conclude that Ferguson has failed to support that claim and will dismiss that count from the Amended Complaint.

### D. Motion to Strike Damages

In the *ad damnum* clause at the end of the Amended Complaint, Ferguson

requests punitive damages with respect to his UTPCPL claim and compensatory, consequential, treble, and exemplary damages with respect to his statutory bad faith claim. In its Motion, Kemper requests the Court to strike these particular requests for damages, asserting that the UTPCPL and section 8371, respectively, do not permit such damages. Because we have above dismissed the UTPCPL count for failure to state a claim, we address the Motion to Strike only as it pertains to Ferguson's section 8371 statutory bad faith claim.

Section 8371 authorizes a court, upon a finding that an insurer has acted in bad faith towards its insured, to:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371. While courts have held that this provision limits a plaintiff's means of recovery in a *statutory* bad faith action, compensatory and other damages nonetheless remain available to a plaintiff under Pennsylvania's common law of contracts, "even where the action is brought on a bad faith theory." *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 410

(W.D. Pa. Apr. 20, 2011). Thus, while section 8371 compels the Court to strike Ferguson's claims for damages not contemplated by the statute in connection with Count IV, we note as we do so that this limitation applies *only* to Ferguson's statutory bad faith claim and does not carry over to the breach of contract or other claims asserted in the Amended Complaint. Accordingly, met with no opposition by Ferguson, we will grant the Motion to the extent it asks the Court to strike the request for compensatory, consequential, treble, and exemplary damages in Paragraph C of the Amended Complaint's *ad damnum* clause.

## V. CONCLUSION

For all of the reasons articulated therein, we will grant the Defendant's unopposed Motion to Dismiss and Motion to Strike (doc. 13) and accordingly dismiss Counts II, V, and VIII of the Amended Complaint (doc. 8) and strike therefrom the Plaintiff's request for compensatory, consequential, treble, and exemplary damages to the extent that request is made pursuant to the Plaintiff's statutory bad faith claim in Count IV.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Defendant's unopposed Motion to Dismiss and to Strike (doc. 13) is **GRANTED** in its entirety.

2. Counts II, V, and VIII of the Amended Complaint (doc. 8) are

**DISMISSED** with prejudice and the Plaintiff's request for compensatory, consequential, treble, and exemplary damages to the extent that request is made pursuant to Plaintiff's statutory bad faith claim in Count IV is **STRICKEN** from the Amended Complaint.

          s/ John E. Jones III
          John E. Jones III
          United States District Judge